UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARTASHA KELLY,<br>    Plaintiff<br>    v.<br>ANTHONY GATON, *et al.*,<br>    Defendants. | Civil Action No. 19-23 (CKK) |

**MEMORANDUM OPINION**
(May 31, 2019)

Plaintiff Lartasha Kelly brings this suit against the District of Columbia and Metropolitan Police Department ("MPD") Officer Anthony Gaton for the events leading to her arrest on June 29, 2018. According to her Amended Complaint, on that day, MPD officers, including Officer Gaton, responded to a call during which they witnessed Plaintiff slap the face of another woman. Without issuing any verbal commands or providing Plaintiff with the opportunity to comply, Plaintiff alleges that Officer Gaton conducted a "takedown" of Plaintiff, slamming her to the ground and fracturing her pelvis. Plaintiff brings claims for negligence and battery against the District of Columbia and Officer Gaton. Additionally, Plaintiff brings a claim against Officer Gaton for violating her Fourth Amendment right to be free from the use of excessive force. Defendants have moved for dismissal of each of Plaintiff's claims, arguing that she has failed to state a claim for which relief may be granted.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will GRANT IN PART and DENY WITHOUT PREJUDICE IN PART

---

[1] The Court's consideration has focused on the following documents:
- Defs. the District of Columbia and Officer Anthony Gaton's Mot. to Dismiss ("Defs.' Mot."), ECF No. 14;
- Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 15;

1

Defendants' Motion to Dismiss. The Court GRANTS IN PART Defendants' motion and concludes that Plaintiff has failed to allege a distinct claim of negligence, separate and apart from Officer Gaton's alleged use of excessive force. Accordingly, the Court will DISMISS WITHOUT PREJUDICE Plaintiff's Count One negligence claim. The Court further DENIES WITHOUT PREJUDICE the remainder of Defendants' motion, concluding that Plaintiff has sufficiently alleged claims for battery and for the violation of her Fourth Amendment rights. Additional factual development is necessary before the Court can further evaluate these two claims.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pled allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Plaintiff alleges that on June 29, 2018, MPD officers, including Officer Gaton, were called to her location at 3915 R St. S.E. in response to an altercation between Plaintiff and another female. Am. Compl., ECF No. 9, ¶ 7. As Officer Gaton approached Plaintiff, he witnessed her slap the face of the other female. *Id.* Plaintiff alleges that no weapons were used, that the slap did not cause serious injury, and that she did not attempt further violence. *Id.* Plaintiff further claims that she made no attempt to flee the scene, to resist Officer Gaton, or to strike him or the other officers. *Id.*

---

- Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Dismissal ("Defs.' Reply"), ECF No. 16; In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

In response to Plaintiff's slap of the other female, Plaintiff claims that Officer Gaton did not issue any verbal commands, but instead immediately and violently slammed Plaintiff to the ground. *Id.* In slamming Plaintiff to the ground, Officer Gaton fell on top of Plaintiff. *Id.* at ¶ 8. Plaintiff alleges that she is 5'3" tall and weighs 131 pounds while Officer Gaton is 6' tall and is believed to weigh approximately 280 pounds. *Id.* At the time that Officer Gaton is alleged to have body slammed Plaintiff, Officer Gaton was accompanied by two other officers who were available to assist him. *Id.* at ¶ 7.

Following her encounter with Officer Gaton, Plaintiff was taken to George Washington Hospital where she was found to have a fractured pelvis. *Id.* at ¶ 8. Later that day, all criminal charges against her were dropped. *Id.*

Plaintiff initially brought suit in the Superior Court of the District of Columbia, but Defendants removed the case to this Court. *See* Notice of Removal, ECF No. 1. Once in this Court, Plaintiff filed an Amended Complaint. *See* Am. Compl., ECF No. 9. Defendants have moved to dismiss each of the claims in Plaintiff's Amended Complaint.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[2] According to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further

---

[2] In her Opposition, Plaintiff contends that exhibits attached to Defendants' Motion to Dismiss have "the effect of converting [Defendants' Motion] to a Motion for Summary Judgment." Pl.'s Opp'n, ECF No. 15, 2 n.1. Defendants contend that the attached exhibits are integral to or referenced in Plaintiff's pleadings, so the Motion remains one for dismissal rather than summary judgment. Defs.' Reply, ECF No. 16, 2-4. The Court did not require reference to the exhibits attached to Defendants' Motion to Dismiss in order to resolve the Motion. As such, the Court need not resolve this dispute and the Court will treat Defendants' Motion as one for dismissal.

3

factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

In her Amended Complaint, Plaintiff brings three claims. In Count One, Plaintiff brings a negligence claim against the District of Columbia and Officer Gaton. Am. Compl., ECF No. 9, ¶¶ 9-13. Plaintiff contends that Officer Gaton violated the national standard of care by using a "violent 'take down' when the offense for which Plaintiff was being arrested was minor in nature; there was no appreciable risk of serious injury to others or to [Officer Gaton] and Plaintiff did not resist or attempt to flee." *Id.* at ¶ 11. In Count Two, Plaintiff brings a battery claim against the District of Columbia and Officer Gaton. *Id.* at ¶¶ 14-16. Plaintiff argues that Officer Gaton intentionally used excessive and unjustified force when he executed a "violent 'take down'" in these circumstances. *Id.* at ¶ 15. Finally, in Count Three, Plaintiff alleges that Officer Gaton violated her civil rights under the Fourth Amendment by unjustifiably and unreasonably using excessive force. *Id.* at ¶¶ 17-21. Defendants move to dismiss all of the claims in Plaintiff's Amended Complaint. The Court will address each of Defendants' arguments for dismissal in turn.

### A. Plaintiff's Negligence Claim

First, Defendants move to dismiss Plaintiff's Count One claim for negligence. Defendants contend that Plaintiff's negligence claim should be dismissed because she has failed

4

to allege a distinct claim of negligence, separate and apart from Officer Gaton's use of excessive force. The Court agrees and finds that Plaintiff's negligence claim is duplicative of her Count Two claim for the intentional tort of battery.

When a plaintiff alleges a negligence claim which is not sufficiently separated from an intentional tort, the negligence "claim will fail because the plaintiff does not articulate elements of a negligent action and may not bootstrap from the battery proof alone, as one may not commit a negligent assault." *D.C. v. Chinn*, 839 A.2d 701, 710 (D.C. 2003). So, "where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is battery alone, … [and] [t]o instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion." *Id.* at 707. In order for the negligence claim to survive, the claim must be (1) "distinctly pled," (2) "based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself," and (3) "violative of a distinct standard of care." *Id.* at 711. In deciding whether or not the negligence claim can survive, the court "is not bound by a plaintiff's characterization of an action and … use of the terms 'carelessly and negligently,' without more, are conclusory and do not raise a cognizable claim of negligence." *Rice v. D.C.*, 626 F. Supp. 2d 19, 24 (D.D.C. 2009) (internal quotation marks omitted).

Here, Plaintiff has met the first requirement for stating a separate negligence claim. Plaintiff has "distinctly pled" both a negligence claim in Count One and a battery claim in Count Two. *Chinn*, 973 A.2d at 711. Accordingly, the first requirement is met.

But, the Court finds that Plaintiff has not met the second requirement for stating a separate negligence claim by alleging "at least one factual scenario that presents an aspect of

negligence apart from the use of excessive force itself." *Id*. Plaintiff's Amended Complaint describes injuries which occurred because Officer Gaton allegedly "violated the national standard of care by using a violent 'take down' when the offense for which Plaintiff was being arrested was minor in nature; there was no appreciable risk of serious injury to others or to himself and Plaintiff did not resist or attempt to flee." Am. Compl., ECF No. 9, ¶ 11. Taking the facts in Plaintiff's Amended Complaint to be true, Plaintiff alleges purely intentional physical contact which occurred when Officer Gaton intentionally executed a takedown. As such, Plaintiff's negligence claim is completely intertwined with her battery claim. In an attempt to create a separate negligence claim, Plaintiff uses words like "accidentally," "clumsy," and "unskillful." *Id*. But, these words, without more, "are conclusory and do not raise a cognizable claim of negligence." *Chinn*, 839 A.2d at 708. Moreover, the Court "is not bound by a plaintiff's characterization of an action." *Id*. Despite the strategic use of certain key words, Plaintiff's Amended Complaint "fail[s] to specify the necessary elements to proceed with a negligence action." *Id.* Even if the injury to Plaintiff was accidental, Plaintiff has pled no facts which would establish that Officer Gaton's use of force itself was anything but intentional. *See Lucas v. D.C.*, 505 F. Supp. 2d 122, 126 (D.D.C. 2007) (explaining that when an injury is caused by excessive force, it does not matter whether the use of excessive force was the "deliberate intention of the officer or [] a mistake as to the limit of objectively reasonable allowable force" (internal quotation marks omitted)).

In endeavoring to distinguish her claim of negligence from her claim of battery, Plaintiff alleges that Officer Gaton executed the takedown in a "clumsy and unskillful manner." Am. Compl., ECF No. 9, ¶ 11. But, that conclusory allegation is insufficient to state a separate negligence claim. Plaintiff is not alleging that Officer Gaton's use of force was justified but

executed in a negligent manner. Instead, Plaintiff claims that the use of excessive force itself violated the national standard of care. *See Id*. (alleging that Officer Gaton "violated the national standard of care by using a violent 'take down' when the offense for which Plaintiff was being arrested was minor in nature; there was no appreciable risk of serious injury to others or to himself and Plaintiff did not resist or attempt to flee"). Because the use of force was undisputedly intentional, Plaintiff has failed to set forth a theory meeting the requirements of a negligence claim.

This case is not like that cited by Plaintiff, *Dormu v. District of Columbia*, 795 F. Supp. 2d 7 (D.D.C. 2011). In that case, the district court found that the plaintiff had pled a separate, negligent factual scenario where the plaintiff alleged that the defendant had either intentionally applied his handcuffs too tightly or had recklessly believed that he had properly applied the handcuffs. *Dormu*, 795 F. Supp. 2d at 30-31. The court emphasized that the plaintiff's second, negligent factual scenario "shares one of the features … identified as common in cases where plaintiffs have been allowed to proceed [with negligence claims]: it involves a possible 'misperception of fact.'" *Id.* (quoting *Chinn*, 839 A.2d at 711).

Here, Plaintiff does not allege that Officer Gaton made any mistake or misperception of fact. She does not allege that Officer Gaton mistakenly thought that she was armed, which may have justified his use of a takedown. And, she does not allege that Officer Gaton was justified in his use of force but erred in his execution of the takedown.

Instead, based on the facts alleged in Plaintiff's Amended Complaint, Officer Gaton's privileged use of force "escalate[d] in an unbroken manner into excessive force," thus making "the cause of action … battery alone, with the privilege having ended at the point where excessive force began." *Chinn*, 839 A.2d at 707. Officer Gaton's use of a violent takedown was

7

intentional making "[a]ny 'negligence' [] inherent in the battery itself." *Id.* at 711. Because Officer Gaton intended to execute the takedown, the "battery did not transmogrify into negligence by the fact that [Officer Gaton] may have in the process mistakenly crossed the line of permissible force." I*d.*

The Court concludes that Plaintiff's allegation of negligence is based on the same factual scenario as her allegation of battery. As such, Plaintiff has failed to meet the second requirement for stating a claim of negligence based on the use of excessive force.

Because Plaintiff failed to allege a negligent factual scenario distinct from her allegations of battery, the Court will DISMISS WITHOUT PREJUDICE Plaintiff's negligence claim. However, the Court will also briefly address the third requirement for stating a separate negligence claim—the negligent act must be "violative of a distinct standard of care." *Chinn*, 839 A.2d at 711. In her Amended Complaint, Plaintiff contends that "Officer Gaton's actions violated the Use of Force Continuum a protocol nationally recognized as the standard of care in the field of policing." Am. Compl., ECF No. 9, ¶ 12. In their Motion to Dismiss, Defendants appear to assume that this "Use of Force Continuum" refers to MPD's Use of Force Policy (MPD General Order 901.07). *See* Defs.' Mot., ECF No. 14-2, Ex. 3. However, at this point in the litigation, it is not clear to the Court whether or not the "Use of Force Continuum" referred to by Plaintiff is the same as the MPD's Use of Force Policy referred to by Defendants. Accordingly, the Court will not analyze Defendants' persuasive arguments that the MPD's Use of Force Policy is not district from the general standard of care for the use of excessive force.

In summary, the Court DISMISSES WITHOUT PREJDUCE Plaintiff's Count One negligence claim. Plaintiff failed to state "at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself." *Chinn*, 839 A.2d at 711. Instead,

8

Plaintiff attempted to state a claim of negligence by invoking certain keywords such as "accidentally," "clumsy," and "unskillful." Am. Compl., ECF No. 9, ¶ 11. However, the invocation of these words does not act as a magic formula for successfully maintaining a negligence claim. Instead, reviewing the factual basis of Plaintiff's claim, the Court concludes that Plaintiff alleges only intentional acts which resulted in the alleged use of excessive force. Accordingly, Plaintiff's negligence claim is dismissed without prejudice as duplicative of her battery claim. *See, e.g., Magliore v. Brooks*, 844 F. Supp. 2d 38, 45 (D.D.C. 2012) (finding the plaintiff's negligence claim was "based principally on the officers' intentional use of force, factual allegations indistinct from those advanced in support of his excessive force and assault and battery claims"); *Lucas*, 505 F. Supp. 2d at 127 ("Because [plaintiff] rests his claims concerning an alleged breach of a duty of care on excessive force, he fails to state a claim upon which relief can be granted for a cause of action sounding in negligence. [The negligence claim] will be dismissed."); *Rawlings v. D.C.*, 820 F. Supp. 2d 92, 109 (D.D.C. 2011) (concluding that the plaintiff's negligence claim, based on the unreasonable use of force, was "indistinguishable from the assault and battery claim").

**B. Plaintiff's Battery Claim**

Second, Defendants move to dismiss Plaintiff's Count 2 claim for battery. Defendants contend that Plaintiff has failed to allege facts sufficient to overcome Officer Gaton's qualified privilege to use reasonable force on Plaintiff. The Court disagrees and finds that Plaintiff has alleged facts to state a claim for battery sufficient to survive a motion to dismiss.

It is well-established that police officers have a qualified privilege "to use some degree of physical coercion or threat thereof" in making an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers, violates the Fourth Amendment." *Id.* (internal citation and quotation marks omitted). "'[T]he test for qualified privilege in a [battery] suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation." *Hargraves v. D.C.*, 134 F. Supp. 68, 91 (D.D.C. 2015) (quoting *Scales v. D.C.*, 973 A.2d 722, 730 (D.C. 2009)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. To determine whether an officer's use of force was reasonable, the court must consider various factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Although the severity of injury "is not by itself the basis for deciding whether the force used was excessive, ... it is a relevant factor." *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 n.7 (D.C. Cir. 1993).

Plaintiff does not appear to dispute that Officer Gaton had a qualified privilege to touch her due to her slap of another female at the scene. *See* Am. Compl., ECF No. 9, ¶ 7. However, Plaintiff contends that even if Officer Gaton was privileged to touch her, he "intentionally used excessive and unjustified force when arresting an unarmed female who was engaged in a minor altercation with another female. He intentionally executed a violent 'take down' when a reasonable police officer faced with like circumstances would not have done so." *Id.* at ¶ 15. Defendant contends that the only allegations that Officer Gaton's use of force was unreasonable are that "Plaintiff was unarmed, that there was a substantial weight discrepancy between Officer Gaton and Plaintiff, that Officer Gaton did not issue a verbal command, and Plaintiff suffered a

10

fractured pelvis as a result of the takedown." Defs.' Mot., ECF No. 14, 15. Defendant explains that these allegations fail to demonstrate that Officer Gaton's takedown was unreasonable and constituted excessive force. The Court concludes that, at this stage in the proceedings prior to discovery, it is not possible to determine whether or not Officer Gaton's use of a takedown was reasonable under the circumstances and protected by qualified privilege.

As an initial matter, the Court notes that there is a factual dispute regarding the circumstances leading to Officer Gaton's use of a takedown. Plaintiff claims that Officer Gaton executed his takedown after Plaintiff "slapped" another female one time causing "no serious injury to her" and making no attempt to strike her again. Am. Compl., ECF No. 9, ¶ 7. Conversely, Defendants claim that the takedown was necessary to "prevent Plaintiff from causing further injury to another female who had just been struck with closed fists in the face multiple times." Defs.' Reply, ECF No. 16, 8. Defendants attach the Arrest Package to their Motion to Dismiss in an effort to establish the veracity of their sequence of events. Defs.' Mot, ECF No. 14-2, Ex. 1. However, even if the Court were to consider the Arrest Package as incorporated into the Amended Complaint by reference, such consideration would not resolve the parties' dispute. The parties fundamentally disagree on the events leading to Officer Gaton's takedown of Plaintiff. The Arrest Package supports Defendants' recitation of events, but it is not sufficient to conclusively establish what happened that night. Instead, discovery will be required before the Court can make such factual findings. And, on a motion to dismiss, the Court is required to credit Plaintiff's factual allegations. *See Ralls Corp.*, 758 F.3d at 314.

Crediting Plaintiff's recitation of events, the Court concludes that Plaintiff has stated a claim for battery sufficient to survive a motion to dismiss. Plaintiff admits that she slapped another female. Am. Compl., ECF No. 9, ¶ 7. However, she further alleges that the one slap

caused no serious injury, that she did not attempt to slap the female again, that she did not attempt to flee, and that she made no attempt to resist or to strike the officers. *Id.* Plaintiff also claims that Officer Gaton did not issue any verbal commands to Plaintiff. Instead, he immediately and violently slammed Plaintiff, who is much smaller than Officer Gaton, to the ground, fracturing her pelvis. *Id.* at ¶¶ 7-8. Plaintiff contends that Officer Gaton took such forceful and violent action despite being accompanied by two other officers who were available to assist him. *Id.* at ¶ 7. Taking Plaintiff's allegations as true, the Court concludes that Plaintiff has pled facts which are, at this time, sufficient to overcome Officer Gaton's qualified privilege and to state a claim for battery. *See Hedgpeth v. Rahim*, 893 F.3d 802, 810 (D.C. Cir. 2018) (explaining that the use of a forcible takedown during a "routine arrest" may be beyond the officer's authority and unreasonable).

In summary, the Court DENIES WITHOUT PREJUDICE Defendants' Motion to Dismiss Plaintiff's Count Two claim of battery. Based on the allegations in her Amended Complaint, Plaintiff has pled sufficient facts which tend to show that Officer Gaton's use of a violent and forcible takedown was unreasonable under the circumstances. As such, the Court will not dismiss this claim at this time. However, the Court expresses no opinion as to whether or not the necessary additional factual development will eventually show Officer Gaton's actions to be unreasonable.

## C. Plaintiff's Civil Rights Violation Claim

Finally, Defendants move to dismiss Plaintiff's Count Three civil rights violation claim against Officer Gaton. Defendants argue that this claim should be dismissed because Officer Gaton is entitled to qualified immunity as it is not "clearly established" that the use of a

takedown was unconstitutional under the circumstances. The Court disagrees and concludes that dismissal is not proper at this time.

Defendants contend that Officer Gaton is protected from this claim by the doctrine of qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). In order for a complaint to counter an assertion of qualified immunity, a plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). With respect to the second element, "though in the light of pre-existing law the unlawfulness [of the officer's conduct] must be apparent, there is no need that the very action in question [have] previously been held unlawful." *Navab-Safavi v. Glassman*, 637 F.3d 311, 317 (D.C. Cir. 2011) (internal citation and quotation marks omitted); *Ashcroft*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Put differently, qualified immunity does not attach simply because the factual circumstances of the present case are in some sense unique. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"). Rather, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

First, taking Plaintiff's allegations to be true, the Court finds that Plaintiff has alleged the violation of a constitutional right. The Fourth Amendment provides individuals with the right to

be free from the use of excessive and unreasonable force in the course of a detention or seizure. *See Graham*, 490 U.S. at 394 (explaining that claims of excessive force to effect an arrest are analyzed under the Fourth Amendment). Here, Plaintiff alleges that Defendant used excessive force in executing a takedown. Plaintiff argues that the use of such excessive force was unreasonable under the circumstances. Plaintiff specifically focuses on the facts that her one slap of the other female caused no serious injury; she did not attempt to slap the female again; she did not attempt to flee; she made no attempt to resist; she did not threaten Officer Gaton or others; she was much smaller than Officer Gaton; Officer Gaton did not provide Plaintiff an opportunity to comply; and Officer Gaton's use of force resulted in the fracture of her pelvis. Am. Compl., ECF No. 9, ¶¶ 7-8. For the reasons previously explained, the Court concludes that Plaintiff has made sufficient allegations to demonstrate that Officer Gaton's use of a takedown may have been unreasonable under the circumstances. *See Supra* Sec. III.B. As such, Plaintiff has sufficiently pled that she was deprived of her Fourth Amendment right to be free from the use of excessive force.

Second, even if Officer Gaton's use of force was objectively unreasonable, to overcome Officer Gaton's qualified immunity, Plaintiff must still show that the right which was violated was clearly established at the time of the conduct. The United States Court of Appeals for the District of Columbia Circuit recently addressed a similar issue in *Hedgpeth v. Rahim*, 893 F.3d 802 (D.C. Cir. 2018). In *Hedgpeth*, the court asked whether it was clearly established that it is "unlawful to use a takedown maneuver against a suspect who was shouting repeatedly and belligerently at the officers, who refused their orders to put his hands behind his back, and who had been described by a person with him as 'hard to handle.'" 893 F.3d at 809. In answering this question, the court found that the defendant officer's use of a takedown maneuver did not violate

14

clearly established law. *Id.* at 810. The court explained that the *Hedgpeth* case was similar to other cases in which the D.C. Circuit had not found excessive force because *Hedgpeth* "involve[d] a person who exhibited belligerent and erratic behavior (and had been described as hard to handle), who shouted at officers in an increasingly agitated fashion, and who repeatedly refused the officers' orders (here, to put his hand behind his back)." *Id.* However, the court cautioned that its decision did not mean that "an officer invariably has authority to forcibly take down a suspect in the course of a routine arrest." *Id.*

As required, taking the allegations in Plaintiff's Amended Complaint to be true, the facts of *Hedgpeth* are easily distinguishable. In *Hedgpeth*, the court emphasized that the arrestee was shouting, belligerent towards the officers, refusing to follow the officers' commands, and known to be "hard to handle." *Id.* at 809-10. Here, Plaintiff admits that she slapped another female when Officer Gaton arrived at the scene. But, Plaintiff specifically claims that it was apparent that the one slap had not caused a serious injury, that Plaintiff was not going to strike the female again, that Plaintiff would not attempt to flee, and that Plaintiff would not resist or strike the officers. Am. Compl., ECF No. 9, ¶¶ 7-8. As such, the factual circumstances upon which the D.C. Circuit relied to find that the use of a takedown was not clearly unlawful in *Hedgpeth* are notably absent from this case. And, the Court is left with the D.C. Circuit's caution that the *Hedgpeth* decision "does not mean an officer invariably has authority to forcibly take down a suspect in the course of a routine arrest." 893 F.3d at 810.

With *Hedgpeth* as guidance, the Court concludes that discovery will be required before the Court can determine whether or not Plaintiff can maintain her civil rights violation claim. An overview of Defendants' argument for dismissal of this claim shows why some discovery is necessary. Defendants contend that once Officer Gaton "saw Plaintiff punching her victim

15

repeatedly in the face, Officer Gaton could reasonably conclude that the victim was in imminent danger of potentially sustaining serious bodily injury" thus justifying the use of a takedown. Defs.' Mot., ECF No. 14, 16. Under the circumstances as stated by Defendants, the Court would be inclined to conclude that Officer Gaton's use of a takedown may not have violated clearly established law.

But, Plaintiff presents an entirely different set of factual circumstances. According to Plaintiff, she slapped the other female one time, causing no physical injury. Other than the isolated slap, Plaintiff claims that she did not act in a manner which would cause the officers to fear for their safety or for the safety of others. For example, Plaintiff alleges that she did not resist, that she made no attempts to flee, and that she did not threaten the officers. Am. Compl., ECF No. 9, ¶¶ 7-8. Despite her lack of danger, Plaintiff alleges that she was subjected to a takedown violent enough to fracture her pelvis. *Id.* At the motion to dismiss stage, the Court accepts Plaintiff's alleged facts to be true. Prior to deciding whether or not Officer Gaton's takedown violated established law, the Court requires additional factual development of the circumstances surrounding Officer Gaton's takedown. *See Jackson v. D.C.*, 327 F. Supp. 3d 52, 66 (D.D.C. 2018) (stating that conflicting accounts of whether or not the plaintiff resisted arrest "suggests a genuine issue of material fact regarding whether the takedown amounted to excessive force"). The need for additional factual development is particularly acute given that other circuit courts found similar uses of force to be unreasonable when the arrestee did not resist police instruction. *See, e.g., Montoya v. City of Flandreau*, 669 F.3d 867, 871-72 (8th Cir. 2012) (finding that the defendant officer's leg sweep was unreasonable when the plaintiff had raised her arm, possibly in a gesture to strike her boyfriend, but "was not threatening anyone, was not actively resisting arrest, and was not attempting to flee"); *Smith v. City of Troy, Ohio*, 874 F.3d

16

938, 945-46 (6th Cir. 2017) (finding that the officer's takedown of the plaintiff was unreasonable where the plaintiff, at most, minimally resisted and there was no evidence that the officer took the plaintiff "to the ground for any reason other than to handcuff him and restrain him forcibly"); *Morris v. Noe*, 672 F.3d 1185, 1197-98 (10th Cir. 2012) (finding that the defendant officer's forcible takedown violated clearly established law because the plaintiff was not a threat to the officer or others and he did not resist or flee).

In summary, the Court DENIES WITHOUT PREJUDICE Defendants' Motion to Dismiss Plaintiff's Count Three civil rights violation claim. Taking the allegations in Plaintiff's Amended Complaint to be true, it is not evident to the Court that the use of a violent takedown, resulting in the fractured pelvis of petite women who was not belligerent, resisting arrest, or threatening serious injury to the officers or others, was reasonable. Based on the current limited record, it is further not evident to the Court whether or not Officer Gaton's use of such force under the circumstances violated established law. As such, the Court concludes that additional factual discovery, including any body-worn camera footage, is necessary before the Court can decide this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES WITHOUT PREJUDICE IN PART Defendants' [14] Motion to Dismiss. The Court GRANTS IN PART Defendants' Motion and DISMISSES WITHOUT PREJUDICE Plaintiff's Count One negligence claim as Plaintiff failed to plead negligence separate and apart from Officer Gaton's allegedly excessive and intentional use of force. The Court otherwise DENIES WITHOUT PREJUDICE Defendants' Motion. Taking the allegations in Plaintiff's Amended Complaint to be true, Plaintiff

17

has alleged claims for battery and for the violation of her Fourth Amendment rights. The Court will require additional factual development before these claims can be assessed more fulsomely.

An appropriate Order accompanies this Memorandum Opinion.

                                                                                                        /s/
                                                                                               COLLEEN KOLLAR-KOTELLY
                                                                                               United States District Judge